## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CARLA M. MULLINS,** | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 2:21cv00036 |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | By: Pamela Meade Sargent |
| **Social Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

*I. Background and Standard of Review*

Plaintiff, Carla M. Mullins, ("Mullins"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 1381 *et seq*. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Mullins protectively filed her application for SSI[1] on November 13, 2014, alleging disability as of November 13, 2014,[2] based on depression; back problems; anxiety; bipolar disorder; obesity; hypertension; stomach problems; and acute bronchitis. (Record, ("R."), at 134, 252.) The claim was denied initially and on reconsideration. (R. at 164-76.) Mullins requested a hearing before an administrative law judge, ("ALJ"). (R. at 134.) A hearing was held on November 14, 2017,[3] at which Mullins was represented by counsel. (R. at 134.)

By decision dated April 30, 2018, the ALJ denied Mullins's claim. (R. at 134-51.) After the ALJ issued his decision, Mullins pursued her administrative appeals. (R. at 177-79.) By order dated December 17, 2018, the Appeals Council remanded Mullins's claim to the ALJ for further proceedings. (R. at 153-54.) The Appeals Council noted it was unable to determine whether the April 30, 2018, decision was supported by substantial evidence because the record upon which the ALJ based his decision could not be located. (R. at 153-54.) Upon remand, the ALJ held a

---

[1] The record does not contain a copy of Mullins's SSI application. Mullins filed an application for Disability Insurance Benefits, ("DIB"), on March 27, 2015, which was denied because she had not worked long enough to qualify for DIB. (R. at 161-63, 228-31.)

[2] Mullins initially alleged a disability onset date of January 31, 2009; however, she later amended her alleged onset date to November 13, 2014. (R. at 134.)

[3] The November 2017 hearing transcript is not contained in the record.

supplemental hearing on February 11, 2020, at which Mullins was represented by counsel. (R. at 38-78.)

By decision dated July 15, 2020, the ALJ denied Mullins's claim. (R. at 11-32.) The ALJ found Mullins had not engaged in substantial gainful activity since November 13, 2014, the application date. (R. at 13.) The ALJ determined Mullins had severe impairments, namely, lumbar spine degenerative disc disease; chronic obstructive pulmonary disease, ("COPD"); asthma; peripheral edema; obesity; depression; anxiety; bipolar disorder; opiate dependence; and polysubstance abuse, including cocaine, methamphetamines, opiates and marijuana, but he found Mullins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-14.)

The ALJ found Mullins had the residual functional capacity to perform light[4] work, except she could occasionally climb ladders, ropes or scaffolds; she could frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl; she was limited to a work environment free of fast-paced production requirements, such as assembly line work, and work involving simple, work-related decisions and few, if any, workplace changes; and she could occasionally interact with the public, co-workers and supervisors. (R. at 18.) The ALJ found Mullins was unable to perform any past relevant work. (R. at 30.) Based on Mullins's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Mullins

---

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2021).

could perform, including the jobs of a housekeeper, an office helper and a laundry aide. (R. at 30-31, 68-69.) Thus, the ALJ concluded Mullins was not under a disability as defined by the Act and was not eligible for SSI benefits. (R. at 32.) *See* 20 C.F.R. § 416.920(g) (2021).

After the ALJ issued his decision, Mullins pursued her administrative appeals, (R. at 299-301), but the Appeals Council denied her request for review. (R. at 1-5.) Mullins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2021). This case is before this court on Mullins's motion for summary judgment filed May 3, 2022, and the Commissioner's motion for summary judgment filed June 2, 2022.

## II. Facts

Mullins was born in 1967, (R. at 30, 44), which, at the time of the filing of her application, classified her as a "younger person" under 20 C.F.R. § 416.963(c), and on the date of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R. § 416.963(d). She obtained a general educational development, ("GED"), diploma and has past relevant work experience as a fast-food worker and a short order cook. (R. at 44-46, 67, 253-54.) Mullins stated she was fired from both jobs because she could not keep up with her work duties. (R. at 52.) She testified that she was released from the hospital the day prior to her hearing after being admitted for three days due to difficulty breathing. (R. at 46-47.) Mullins stated she had been put on oxygen long-term. (R. at 47-48.) She testified that she used marijuana because it was the "only thing that I can get to calm me down." (R.

at 49-50.) Mullins stated she had nightmares related to things that she experienced while incarcerated. (R. at 57.)

In rendering his decision, the ALJ reviewed records from Joseph Leizer, Ph.D., a state agency psychologist; Mendoza Ryan, Ph.D., a state agency psychologist; Dr. John Shane, M.D., a state agency physician; Dr. Walid Saado, M.D.; Dickenson County Behavioral Health; Norton Community Hospital; Dickenson Community Hospital; Clintwood Community Medical Care; Watauga Recovery Center; Restoration and Wellness East Tennessee Recovery, ("East Tennessee Recovery"); Renaissance Medical Care; Leigh A. Ford, Ph.D., a licensed psychologist; and ReVida Recovery Center.

By way of background, Mullins was hospitalized five times in the late 1990s and at the Life Center of Galax in 2003 due to an addiction to opiate medication. (R. at 19, 457.)  Mullins underwent counseling at Dickenson County Behavioral Health for depression and anxiety from 2009 through June 2011, (R. at 19, 473-91), and was discharged for failing to keep her appointments. (R. at 478.)

From 2014 through 2015 Dr. Walid Saado, M.D., saw Mullins monthly and diagnosed low back and shoulder pain; obesity; gastroesophageal reflux disease, ("GERD"); COPD; acute bronchitis; anxiety; and depression. (R. at 302-441.) Mullins routinely denied anxiety, depression, cough, shortness of breath and wheezing. (R. at 305, 313, 321, 328, 336, 342, 351, 365, 373, 381, 389, 397, 413, 429, 437.) Mullins's examination findings showed her breathing was unlabored with no wheezes, rhonchi or rales; she had bilateral paralumbar tenderness and tenderness in her lumbar sacral spine; she had normal range of motion; she had positive straight leg raising tests on the left; her extremities had no deformities, clubbing, cyanosis or

edema; she had normal sensation and strength in her bilateral upper and lower extremities; her deep tendon reflexes were symmetric and normal; she had a normal gait; she was fully oriented; she had intact memory; and her judgment, insight, mood, affect and speech were normal. (R. at 306-08, 314-16, 322-24, 330-31, 338-39, 346-47, 353-54, 360-61, 367-68, 382-84, 390-92, 398-400, 430-32, 438-40.) Mullins reported her chronic back pain, shoulder pain, hypertension and stomach problems were controlled with medication, and she stated her "nerves" were better with medication. (R. at 302, 304, 378, 386, 394, 426.) In April and May 2014, Mullins's examinations revealed epigastric tenderness, with normal bowel sounds; her liver was not enlarged; and she had no masses. (R. at 398, 414.) On September 23, 2014, Mullins complained of chest congestion, cough and wheezing. (R. at 370.) Her examination findings remained unchanged except her lungs revealed wheezes, rhonchi and rales. (R. at 374-75.)

On November 7, 2014, Mullins presented to the emergency department at Norton Community Hospital for complaints of low back pain after "running out" of pain medication. (R. at 448-56.) She was diagnosed with chronic back pain. (R. at 456.) On February 17, 2015, Mullins again presented to the emergency department at Norton Community Hospital for complaints of chronic back pain. (R. at 442-47.) She was diagnosed with chronic back pain. (R. at 446.)

On May 28, 2015, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding there was insufficient evidence to determine Mullins's ability to perform activities of daily living, to maintain social functioning and to maintain concentration, persistence or pace. (R. at 114-15.) He found Mullins's anxiety disorders; affective disorders; and drugs, substance addiction disorders were nonsevere. (R. at 114.)

On August 26, 2015, Dr. John Shane, M.D., a state agency physician, found Mullins could lift and carry items weighing up to 50 pounds occasionally and up to 25 pounds frequently; sit and stand and/or walk up to six hours each in an eight-hour workday; and push/pull as much as the lift/carry restrictions. (R. at 124-26.) Dr. Shane found no postural, manipulative, visual, communicative or environmental limitations. (R. at 125.)

In September 2015, Mullins had an initial assessment at Dickenson County Behavioral Health and was diagnosed with major depressive disorder, recurrent episode; generalized anxiety disorder; and opioid dependence, in remission. (R. at 465-66.) Mullins continued individual counseling with Tony Mullins, Q.M.H.P., a qualified mental health professional, ("T. Mullins"), through September 2019. (R. at 457-71, 626-54, 1146-63.) During this time, Mullins reported depression and anxiety related to family conflict and financial problems. (R. at 626, 628, 636-37, 639, 641, 643, 645, 647, 649, 651, 653, 1146-47, 1149, 1153, 1155, 160, 1162, 1170.) In April 2019, T. Mullins reported that Mullins's anxiety and depression, due to interpersonal stressors and conflict, were further compromised by her substance abuse. (R. at 1149.)

On November 25, 2015, Ryan Mendoza, Ph.D., a state agency psychologist, completed a PRTF, finding Mullins had moderate limitations in her ability to perform activities of daily living; to maintain social functioning; and to maintain concentration, persistence or pace; and she had no episodes of decompensation for extended duration. (R. at 122-23.) He found Mullins's anxiety disorders; affective disorders; and drugs, substance addiction disorders were nonsevere. (R. at 122.)

That same day, Mendoza completed a mental assessment, finding Mullins had moderate[5] limitations in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to respond appropriately to changes in the work setting. (R. at 125-27.) Mendoza stated Mullins's work-related mental abilities were, otherwise, not significantly limited. (R. at 126-27.) Mendoza opined Mullins was able to understand and follow simple instructions; to maintain attention for two-hour periods during an eight-hour workday; to interact appropriately with co-workers and supervisors; and to adequately cope with stressors in a work-like setting. (R. at 127.)

Throughout 2016, Dr. Saado saw Mullins monthly for her complaints of low back pain, insomnia, anxiety, depression, hypertension and right elbow pain. (R. at 658-717.) Mullins's examinations remained unchanged, except she had lumbar spasticity and a depressed affect. (R. at 659, 662, 665, 668, 671, 674.) Despite being angry, depressed, anxious and ecstatic on a couple of occasions, her memory was intact, and her thought process was appropriate. (R. at 698-99, 705-07, 714-15.)

---

[5] The regulations define "moderate limitations" as those resulting in a fair ability to function independently, appropriately, effectively and on a sustained basis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c) (2021).

On April 1, 2016, Mullins presented to the emergency department at Dickenson Community Hospital for complaints of a cough and tenderness below her ribs. (R. at 501-09.) Chest x-rays showed no acute cardiopulmonary process. (R. at 509.) Mullins was diagnosed with acute bronchitis and an upper respiratory infection. (R. at 508.) On May 10, 2016, Mullins presented to the emergency department at Dickenson Community Hospital for complaints of a nonproductive cough and back and groin pain. (R. at 493-500.) She was diagnosed with acute bronchitis and an upper respiratory infection. (R. at 500.) On December 1, 2016, Mullins presented to the emergency department at Dickenson Community Hospital for complaints of neck pain and swelling. (R. at 582-88.) Mullins was diagnosed with cervical sprain/strain. (R. at 588.)

From December 2016 through September 2017, Mullins was treated by Amanda Moore, N.P., a nurse practitioner at Clintwood Community Medical Care, for back and neck pain, anxiety and depression. (R. at 511-32, 590-99.) Mullins's examinations revealed she was well-groomed; her lungs were clear with no rales, rhonchi or wheezing; she had mild tenderness to palpation in her low back; she had a mildly antalgic gait; she exhibited pain with back flexion and extension; her speech was fluent; she was fully oriented and cooperative; her mood was anxious; and her insight and judgment were good. (R. at 513, 517, 521, 525, 530, 592, 597.)

On February 14, 2017, Mullins presented to the emergency department at Dickenson Community Hospital for complaints of back pain and increased coughing. (R. at 571-81.) Chest x-rays showed no evidence of acute disease. (R. at 580.) Mullins was diagnosed with thoracolumbar sprain/strain and acute bronchitis. (R. at 579.)

In March 2017, Mullins was seen at Watauga Recovery Center on four occasions for opioid dependence. (R. at 542-57.) She reported stressors, including relationship problems with her husband and having to "take care of everyone." (R. at 549-50, 557.) Mullins was fully oriented and cooperative; she had a normal gait; she had full strength in her upper and lower extremities, bilaterally; her neck was supple without midline tenderness; she had normal range of motion; and her lungs were clear. (R. at 542, 546-47, 550, 554.) During this time, Mullins relapsed by using morphine and marijuana. (R. at 553, 557.) A couple of months later, Mullins reported illegal use of marijuana, Suboxone and Klonopin. (R. at 558.)

On March 27, 2017, Moore completed a mental assessment, finding Mullins had a satisfactory ability to follow work rules and to understand, remember and carry out simple job instructions. (R. at 534-36.) She found Mullins had serious limitations in her ability to relate to co-workers; to deal with the public; to use judgment in public; to interact with supervisors; to function independently; to understand, remember and carry out detailed job instructions; to maintain personal appearance; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 534-35.) Moore opined Mullins had no useful ability to deal with work stresses; to maintain attention and concentration; and to understand, remember and carry out complex job instructions. (R. at 534-35.) She found Mullins would be absent from work more than two days a month. (R. at 536.)

That same day, Moore completed a medical assessment, finding Mullins could occasionally lift and carry items weighing five pounds and less than 10 pounds frequently; she could stand and/or walk and sit less than one hour each in an eight-hour workday and could do so without interruption; she could never climb, stoop, kneel, balance, crouch or crawl; she had a limited ability to push and pull; and she

had no environmental restrictions. (R. at 538-40.) She found Mullins would be absent from work more than two days a month. (R. at 540.)

On May 23, 2017, Mullins presented to the emergency department at Dickenson Community Hospital for complaints of a cough and headache. (R. at 563-70.) Chest x-rays showed no acute thoracic process. (R. at 570.) She was diagnosed with acute bronchitis. (R.at 563, 568.)

On September 19, 2017, Mullins began treatment at East Tennessee Recovery for opioid dependence. (R. at 656.) Mullins was compliant, and she attended therapy and counseling. (R. at 656.) The record shows she participated in group and individual therapy from May 2018 through April 2019, for opioid use. (R. at 956-1131.)

On September 23, 2017, Mullins presented to the emergency department at Dickenson Community Hospital for complaints of a cough and swelling in her legs. (R. at 601-12.) Chest x-rays showed minimal degenerative changes in the spine without significant compression deformity. (R. at 611.) Mullins was diagnosed with acute exacerbation of COPD; peripheral edema; pitting; and hypokalemia. (R. at 609.)

On April 5, 2018, Mullins presented to the emergency department at Dickenson Community Hospital for complaints of back and hip pain after falling. (R. at 838-43.) X-rays of Mullins's hips were normal, and x-rays of her lumbar spine showed mild facet arthropathy of the lower lumbar spine without definite evidence of acute osseous abnormality. (R. at 834, 836.) Mullins was diagnosed with acute chronic back pain. (R. at 839.)

Throughout 2019, Dr. Saado saw Mullins monthly for her complaints of low back pain, insomnia, anxiety, depression, hypertension and right elbow pain. (R. at 845-85.) On January 28, 2019, Mullins saw Dr. Saado reporting a cough, wheezing and shortness of breath. (R. at 877-85.) She stated she smoked two packs of cigarettes a day. (R. at 877.) Dr. Saado noted Mullins was not compliant with taking her medications,[6] except she took Suboxone, Neurontin and Vistaril. (R. at 877.) On examination, wheezes and rhonchi were heard, bilaterally; she was hyper resonant to percussion over the fair entry; and she had decreased breathing sounds, bilaterally. (R. at 882.) On August 9, 2019, Mullins had scattered wheezes, bilaterally, and rhonchi was heard; she had tenderness in her back; decreased range of motion; negative straight leg raising tests; and her strength, sensation and memory were intact. (R. at 849-50.)

From June to August 2019, Mullins received Suboxone treatment at ReVida Recovery Center.[7] (R. at 915-54.) Mullins consistently relapsed during this time by using Gabapentin, methamphetamine, Klonopin and marijuana. (R. at 919, 924, 932, 941.)

From September 2019 through January 2020, Mullins was treated by Dr. George Halstead, M.D., a physician with Renaissance Medical Care, for opioid dependence, depression and anxiety. (R. at 727-819, 1133-40.) On September 25, 2019, x-rays of Mullins's lumbar spine showed mild facet arthropathy from the L4 through S1 discs and mild disc space narrowing at the L5-S1 level. (R. at 908.) X-

---

[6] In April and June 2019, Dr. Saado continued to report Mullins's noncompliance with medication. (R. at 861, 869.) Mullins's urine drug screens around this time were positive for methamphetamine, amphetamine and marijuana. (R. at 845, 887.)

[7] It was noted that Mullins had previously treated in June 2017. (R. at 912-15.)

rays of Mullins's pelvis showed no acute osseous abnormality. (R. at 909.) Mullins's examinations revealed she was in no acute distress; her breath sounds were clear, bilaterally; she was fully oriented; she was hyperactive; her mood and affect ranged from normal, irritable and angry; she was well-groomed; she made good eye contact; her speech was excessive, loud and rapid; and her attention, thought content and memory were normal. (R. at 728-29, 733-34, 745-46, 755-56, 765-66, 771-72, 781-82, 787-88, 797, 803-04, 809-10, 815-16, 1134, 1138.) Mullins reported she was doing well, stating her asthma, hypertension, GERD, irritable bowel syndrome and COPD were controlled with medication, and her insomnia, anxiety and depression were improved with medication. (R. at 740-41, 747, 757, 767, 783, 789, 805, 811, 817.)

On November 16, 2019, Leigh A. Ford, Ph.D., a licensed psychologist, evaluated Mullins at the request of Disability Determination Services. (R. at 900-04.) Mullins reported she smoked cigarettes and marijuana daily, and she stated she had smoked marijuana the morning of the evaluation. (R. at 901.) Mullins reported difficulty sleeping due to restlessness and pain. (R. at 901.) She reported she managed grooming and hygiene tasks independently; she could not perform any indoor or outdoor chores; she enjoyed watching television; and she visited with her family. (R. at 901.) Ford reported Mullins's clothing was appropriate, but her grooming and hygiene were lacking; she was fully oriented; her motor activity was agitated; she was overly dramatic and cried during the examination; she maintained eye contact; her facial expressions were tense; she was cooperative; her affect was variable with a somewhat pessimistic and depressed mood; she had normal speech; her thought content was appropriate and consistent with mood; she did not experience hallucinations or demonstrate any signs of delusional behavior; her

organization of thought was tangential, and it was difficult to keep her focused;[8] she had adequate judgment and adequate reality testing; she had some gaps in insight; and her coping skills appeared to be "somewhat overwhelmed." (R. at 901-02.)

Mullins scored 24/30 on the Montreal Cognitive Assessment, ("MoCA").[9] (R. at 902.) Ford diagnosed unspecified depressive disorder; unspecified anxiety disorder; unspecified opioid use disorder, on maintenance therapy; and unspecified cannabis related disorder. (R. at 903.) Ford opined Mullins had no limitations in her ability to understand, remember and carry out simple, repetitive tasks; she had moderate to marked limitations on her ability to tolerate stress and pressures of day-to-day employment; and she had moderate limitations on her ability to sustain attention and concentration towards simple, repetitive tasks and to respond appropriately to supervision, co-workers and work pressures. (R. at 903.)

On November 25, 2019, Ford completed a mental assessment, finding Mullins had moderate limitations, resulting in a fair ability, to interact appropriately with the public, supervisors and co-workers. (R. at 905-07.) She opined Mullins had a marked, or seriously limited, ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 905-06.)

---

[8] Ford indicated that Mullins's use of cannabis the morning of the examination could have had a negative impact on her organization of thought during the examination. (R. at 906.)

[9] The MoCA test is a series of questions designed to detect problems with cognition. The individual is considered to have normal cognitive abilities with a score of 26 to 30 points. A score of 19 to 25 indicates mild cognitive impairment. *See* https://www.healthgrades.com/right-care/dementia/the-moca-montreal-cognitive-assessment-test-for-dementia (last visited Dec. 14, 2022).

On January 29, 2020, T. Mullins completed a mental assessment, finding Mullins had moderate to extreme limitations in her ability to perform all occupational, performance and personal/social adjustments, except he found she had slight limitations in her ability to maintain personal appearance. (R. at 1142-44.) He opined Mullins would be absent from work more than two days a month. (R. at 1144.) He based these findings on Mullins's anxiety, depression and negative impulsive reactions to stress. (R. at 1143-44.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2021). *See also Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983); *Hall v. Harris,* 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 1382c(a)(3)(A)-(B); *McLain v. Schweiker*,

715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano,*
617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining
whether substantial evidence exists in the record to support the ALJ's findings. This
court must not weigh the evidence, as this court lacks authority to substitute its
judgment for that of the Commissioner, provided her decision is supported by
substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In
determining whether substantial evidence supports the Commissioner's decision, the
court also must consider whether the ALJ analyzed all the relevant evidence and
whether the ALJ sufficiently explained his findings and his rationale in crediting
evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-40 (4th Cir.
1997).

Mullins argues the ALJ erred by improperly determining her residual
functional capacity by rejecting the opinions of Moore, T. Mullins and Ford.
(Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment,
("Plaintiff's Brief"), at 5-6.) Mullins argues the ALJ erred by relying on the state
agency consultants' assessments, which he contends were "stale [and] outdated."
(Plaintiff's Brief at 6.)

The ALJ is not required to adopt a residual functional capacity assessment of
a treating or examining physician in determining a claimant's residual functional
capacity. Instead, the ALJ is solely responsible for determining a claimant's residual
functional capacity. *See* 20 C.F.R. § 416.946(c) (2021); *see also* 20 C.F.R. §
416.927(d)(2) (2021) (a claimant's residual functional capacity is an issue reserved
exclusively to the Commissioner). The relevant question is whether the ALJ's

residual functional capacity assessment is based upon all the relevant evidence, including medical records, medical source opinions and the claimant's subjective allegations and description of her own limitations. *See* 20 C.F.R. § 416.945 (2021).

A claimant's residual functional capacity refers to the most the claimant can still do despite her limitations. *See* 20 C.F.R. § 416.945(a). The ALJ found Mullins had the residual functional capacity to perform light work, except she could occasionally climb ladders, ropes or scaffolds; she could frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl; she was limited to a work environment free of fast-paced production requirements, such as assembly line work, involving simple, work-related decisions and few, if any, workplace changes; and she could occasionally interact with the public, co-workers and supervisors. (R. at 18.)

In making this residual functional capacity finding, the ALJ stated he was giving little weight to Moore's opinion that Mullins essentially could perform less than sedentary work because "it was more restricted than warranted by the medical evidence of record." (R. at 25.) The ALJ noted that Moore's own treatment notes showed few abnormalities on physical examination, and Mullins was treated conservatively with medication. (R. at 25.) The ALJ also noted he was giving Moore's assessment little weight because she is not an acceptable source under the regulations. As a nurse practitioner, Mullins is not considered an acceptable medical source as defined by the Act. *See* 20 C.F.R. § 416.902(a) (2021) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and – for limited purposes – licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice nurses and licensed physician assistants). Evidence from such nonacceptable medical sources

cannot be used to establish the existence of a medically determinable impairment, but they may "provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." *Ingle v. Astrue*, 2011 WL 5328036, at *3 (W.D. N.C. Nov. 7, 2011) (citing S.S.R. 06-03p, WEST'S SOCIAL SECURITY REPORTING SERVICE, Rulings (West Supp. 2013); 20 C.F.R. § 416.927(a)).

As noted by the ALJ, although Mullins had some positive physical examination findings, such as back tenderness and pain, limited range of motion, mildly antalgic gait and positive straight leg raising tests, she otherwise had normal musculoskeletal findings. (R. at 24-27, 29.) Diagnostic tests showed minimal to mild findings. (R. at 29.) In addition, Mullins reported medication controlled her pain, hypertension, GERD, asthma and COPD. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ gave little weight to the assessment of the state agency physician, Dr. Shane, who opined Mullins had the residual functional capacity to perform medium[10] work, because it was less restrictive than warranted by the medical evidence of record. (R. at 24.)

The ALJ stated he was giving little weight to the mental assessments of Moore and T. Mullins because they were more restrictive than warranted by the psychiatric evidence of record. (R. at 25-27.) The ALJ noted that their treatment notes usually

---

[10] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2021).

showed that Mullins had a normal mood and affect, and she had good insight and judgment. (R. at 25-27.) The ALJ also found that T. Mullins is not considered an acceptable medical source as defined by the Act. (R. at 27.) *See* 20 C.F.R. § 416.902(a).

The ALJ gave some weight to Ford's November 2019 examination findings and mental assessment. (R. at 26-27.) The ALJ found Ford's opinion and assessment generally were consistent with the record, which showed Mullins received treatment for psychiatric disorders. (R. at 26.) The ALJ found that Mullins had moderate, instead of no, limitation in her ability to understand, remember or apply information, and she had moderate, instead of marked, limitation in her ability to handle stress and pressures of day-to-day employment. (R. at 26.) The ALJ noted Mullins received medication assisted treatment with Suboxone for her addiction disorder, but she had some problems following treatment recommendations. (R. at 26-27.) In addition, the ALJ noted Ford did not clarify what she meant by "some issues" with concentration and organization of thought in vocational terms. (R. at 26-27.) He also noted Ford did not clarify the extent of the "negative impact" of cannabis usage on Mullins's ability to work. (R. at 27.) The ALJ noted Mullins was able to care for her grandchildren and complete her activities of daily living. (R. at 26-27.)

The record shows that, although Mullins had some positive mental status examination findings and needed assistance with coping skills, mental health monitoring and finances, she otherwise was cooperative; maintained eye contact; had a normal mood and affect; her memory, judgment and insight were intact; she was fully oriented; her thought content was appropriate; and her reality testing was adequate. In addition, Mullins reported her insomnia, anxiety and depression improved with medication. *See Gross*, 785 F.2d at 1166.

- 19 -

The ALJ gave great weight to state agency psychologist, Mendoza, because it generally was consistent with the psychiatric evidence of record. (R. at 24-25.) Based on the moderate limitations assessed by Mendoza, the ALJ limited Mullins to low stress, simple work that avoided more than occasional interaction with other people. (R. at 25.)

Mullins argues that the ALJ should have given the state agency consultants' assessments less weight because they were "stale [and] outdated," as they did not have the benefit of reviewing the updated records and opinions from her treating providers. (Plaintiff's Brief at 6.) However, the simple fact that those opinions came later in time than the state agency opinions does not mean that they should be accorded greater weight. As the Third Circuit has noted, "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *see also Stricker v. Colvin*, 2016 WL 543216, at *3 (N.D. W. Va. Feb. 10, 2016) ("[A] lapse of time between State agency physician opinions and the ALJ's decision does not render the opinion stale.") It is apparent from the ALJ's very thorough decision that he carefully evaluated the whole record before him when making his residual functional capacity finding.

Based on this, I find substantial evidence exists to support the ALJ's consideration of the medical evidence and his residual functional capacity finding.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's consideration of the medical evidence;

2. Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Mullins was not disabled under the Act and was not entitled to SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Mullins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings

or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:      January 10, 2023.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE